**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| OSCAR MANUEL GARCIA, | : | Civil No.: 10-752 (RMB) |
| Petitioner, | : |  |
| v. | : | **O P I N I O N** |
| WARDEN ZICKEFOOSE, | : |  |
| Respondent. | : |  |

**APPEARANCES:**

    OSCAR MANUEL GARCIA, Petitioner Pro Se
    #41882-018
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, NJ 08640

**BUMB,** District Judge

This matter is before the court pursuant to a petition for a writ of habeas corpus under 28 U.S.C. § 2241, filed by petitioner Oscar Manuel Garcia ("Garcia"), on or about February 8, 2010. The named respondent is Warden Zickefoose. Petitioner paid the $5.00 filing fee on or about June 3, 2010.

### I. BACKGROUND

Garcia challenges a February 26, 2009 prison disciplinary finding, which resulted in the loss of 27 days good conduct time ("GCT"), 60 days loss of telephone privileges, and "30 days disciplinary segregation, suspended pending 180 days clear

conduct." Petition, Ex. B, Disciplinary Hearing Officer ("DHO") Report, at ¶ VI. It appears that Garcia is seeking to have the disciplinary action expunged.

The incident at issue in this habeas petition occurred on or about January 8, 2009. On that date, Garcia submitted a BP-199 request for withdrawal of $50.00 from Inmates Personal Funds, payable to PACtel Phone Company. The next day, an Incident Report was issued against Garcia for violation of Code 297A, telephone abuse. (Petition, Exhibit A, January 9, 2009 Incident Report). The Incident Report stated that PACtel is a third party calling/billing service, which is a direct violation of Program Statement 5264.08, which expressly prohibits third party billing and electronic transfer of a call to a third party. (Id., Incident Report at ¶ 11).

The DHO Report shows that Garcia declined a staff representative. He was read and understood his rights before the DHO. No witnesses were called at the disciplinary hearing. At the hearing, Garcia made the following statement: "I never called them. I got the form from my family. I filled out the form because I thought it was legal to do this." (Id., Ex. B, DHO Report at ¶¶ II.A, III.B and C1).

The DHO found that Garcia committed the Code violation as charged. Specifically, the DHO found:

> I find that on or about January 8, 2009, at 3:30 p.m., Unit 5752, at the Federal Correction Institution, Fort Dix, New

2

>Jersey, you did commit the prohibited act of attempting to use a call forwarding service.
>
>This decision is based on the evidence provided before me which is documented in the written report by the reporting employee. The employee documented,
>
>"On the above date and time, inmate Garcia #41882-018 handed me a BP-199 (Request for Withdrawal of inmate Personal Funds) addressed to PACTEL in the amount of fifty dollars. PACTEL has been identified as a third party calling/billing service by FTD SIS. This is a direct violation of Program Statement 5264.08 which states "third party billing and electronic transfer of a call to a third party is prohibited."
>
>The DHO considered your statements, specifically, "I got the form from my family. I filled out the form because I thought it was legal to do this.", as supporting the incident report as written.
>
>The violation of prohibited act Code 297A is supported in the incident report, specifically, "On the above date and time, inmate Garcia #41882-018 handed me a BP-199 (Request for Withdrawal of inmate Personal Funds) addressed to PACTEL in the amount of fifty dollars. PACTEL has been identified as a third party calling/billing service by FTD SIS."
>
>Based upon the evidence provided before me, your actions are consistent with a violation Code 297A-Attempted Use of telephone for abuses other than criminal activity.

(Id., DHO Report at ¶ V).

The DHO sanctioned Garcia to 27 days loss of good conduct time ("GCT"), 60 days loss of telephone privileges, and 30 days disciplinary segregation, suspended pending 180 days clear conduct.  (Id., DHO Report at ¶ VI).  The DHO stated his reasons for imposing these sanctions as follows:

>The use of a telephone while incarcerated is a privilege, not a right. It is an important part of the institution's security that inmates only be allowed to contact those persons authorized. Not only is this an internal security

3

>matter but the Bureau of Prisons has an obligation, to the public at large, to ensure that inmates are not attempting to use the telephone to contact unauthorized persons, for criminal activity, drug transactions, conducting businesses, or to threaten, or harass, members of the public.  For these reasons, the Bureau of Prisons has developed telephone monitoring procedures.  Knowing and abiding by these procedures is incumbent upon you, if you wish to use the telephone while serving out your sentence.
>
>Disciplinary Segregation, suspended, loss of telephone, are meant to demonstrate the seriousness of the offenses to you as well as everyone incarcerated at this facility.  The DHO has imposed lenient sanctions due to your overall positive institutional adjustment.

(Id., DHO Report at ¶ VII).

Garcia exhausted his administrative appeals to the Northeast Regional Director and to the Central Office in Washington, D.C. He attaches his administrative appeals and the responses to his petition, as follows: (1) his March 8, 2009 appeal at Ex. C; (2) the Regional Director's response dated April 17, 2009 at Ex. D; (3) his May 9, 2009 administrative appeal to the Central Office at Ex. E; and (4) the September 2, 2009 response from the Central Office denying the appeal, at Ex. F.

Garcia filed this habeas petition for relief on or about February 8, 2010.

II.  DISCUSSION

A.  Standard of Review

Section 2243 of Title 28 of the United States Code provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

Garcia seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[1]  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  In this instance, Garcia argues that the sanctions imposed violate the Eighth Amendment of the United States Constitution.

Garcia is proceeding as a pro se litigant.  A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the district courts within their respective jurisdictions
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless-   (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

B.   <u>Applicable Regulations</u>

The Federal Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 <u>et seq</u>.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because the charge was designated as a "High" category offense and the UDC does not have the authority to

6

disallow good conduct time.  Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) a 24-hour advance written notice of the charge before an inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO is required to prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S.

539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  Merits of Petitioner's Claims

   1.  *There Was No Denial of Procedural Due Process*

   The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S. CONST. amend. XIV.  In Wolff v. McDonnell, supra, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).  However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not

part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

Here, the record shows that Garcia was afforded all the procedural rights to which he was entitled under Wolff and Von Kahl.  Indeed, Garcia does not argue that his procedural due process rights were violated in this regard.  Accordingly, this Court concludes that Garcia has not demonstrated any denial of due process to warrant a grant of habeas relief.

2.  *There Was Sufficient Evidence to Support the Charge*

Garcia argues that there was sufficient evidence to show that he was not guilty, and that the Bureau of Prisons ("BOP") overlooked the fact that this was an instance of false advertising.  For instance, he claims that PACtel advertised that its service was approved by the BOP.  Garcia also contends that if he were trying to circumvent the inmate telephone system ("ITS"), he could have had his family pay for the service and then add the new number to his phone list.  Finally, he claims that the sanctions violate his Eighth Amendment right against cruel and unusual punishment.

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record."

9

Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991). The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted). Moreover, the Court stated: "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Id. at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination. The DHO's Report demonstrates that the DHO considered and relied upon the reporting officer's description of the incident as set forth in the Incident Report, which stated that Garcia requested a withdrawal of funds addressed to PACtel, which had been identified as a third party calling/billing service, a service prohibited under Program Statement 5264.08. The DHO also found unavailing Garcia's statement that he thought this was a legal activity.

10

Further, this Court notes that a Code 297 violation includes circumventing telephone monitoring procedures. See BOP Program Statement 5270.07, Inmate Discipline and Program Statement 5264.08.  Here, the evidence relied upon by the DHO shows that Garcia had attempted to circumvent the ITS system by trying to purchase a third party calling/billing service, which is prohibited.  Moreover, the DHO reasoned that it is an inmate's responsibility to know and abide by the telephone monitoring procedures.  These findings are sufficient in satisfying the evidentiary standard required by due process in prison disciplinary proceedings.

Indeed, on his administrative appeal to the Central Office, the Administrator of National Inmate Appeals expressly stated:

> We concluded the DHO considered all relevant evidence, relying upon its greater weight, as detailed in Section V of the DHO report, to support the decision.  We find the determination, based on this evidence, reasonable.  You claimed to be the victim of false advertising.  We reviewed the documentation you provided as well as the evidence considered.  The documentation clearly states in several places that a PACtel phone line is for families in the community.  It does not offer anywhere an advantage to an incarcerated individual.  Your claim of being victimized is without merit.  Rather, it appears you were attempting to circumvent the Inmate Telephone System (ITS), even if your motivation was simply to establish cheaper connections.

(Pet., Ex. F).

Consequently, the Court finds that the DHO's Report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary."  Hill, 472 U.S. at 457.  Further, Garcia has not proffered any evidence

of unreliability sufficient to undermine the "some evidence" standard. Accordingly, there was more than sufficient evidence to support the DHO finding that Garcia had committed the prohibited act as charged.

Moreover, the procedures enunciated in <u>Wolff</u>, <u>supra</u>, were complied with, as there was "some evidence", in accordance with <u>Hill</u>, <u>supra</u>, to support the DHO's finding of guilt. <u>See</u> <u>Sinde v. Gerlinski</u>, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting <u>Hill</u>, 472 U.S. at 457).

Therefore, there is no basis to expunge the incident report and sanctions imposed because Garcia has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding. The habeas petition will be dismissed for lack of merit.

   3. *The Sanctions Imposed Were Not An Atypical Or Significant Hardship on Petitioner.*

Garcia also challenges his sanctions as being cruel and unusual punishment in violation of the Eighth Amendment.

The Court notes that the sanctions as imposed were within the range of sanctions available for the violations of Code 297A, and did not impose an atypical or significant hardship on Garcia. Moreover, the DHO stated that the sanctions imposed were lenient given Garcia's overall positive institutional adjustment.

12

In response to Garcia's administrative appeal, the Regional Director found that, based on the greater weight of evidence, the DHO's decision to impose sanctions was consistent with the severity level of the violation and in compliance with BOP Program Statement 5270.07, Inmate Discipline, and were not disproportionate to Garcia's conduct.  (Pet., at Ex. D).

The National Inmate Appeals Administrator also found that the "sanctions imposed were appropriate and consistent with the parameters identified in Chapter 4 of the PS [Program Statement]."  (Pet., at Ex. F).

Consequently, this Court finds that the sanctions imposed, including the loss of privileges, are within the range of sanctions listed under 28 C.F.R. §541.13(a)(2).  Moreover, the loss of privileges sanction do not work an "atypical and significant hardship" on Garcia, and do not serve to extend his confinement beyond the expected parameters of his sentence.  See Sandin v. Connor, 515 U.S. 472, 484-85 (1995).[2]  Accordingly,

---

[2] Under certain circumstances, liberty interests may arise under the Due Process Clause or by operation of state law or regulations.  Sandin, 515 U.S. at 483-84.  Sandin also applies to Fifth Amendment claims involving federal prison regulations.  Castillo v. FBOP, No. 05-5076, 2006 WL 1764400, *3 (D.N.J. June 23, 2006), aff'd, 221 Fed. Appx. 172 (3d Cir. 2007).  Nevertheless, such liberty interests are implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment."  Sandin, 515 U.S. at 484-86.  Disciplinary action by federal prison officials in response to a wide range of misconduct is not atypical but rather, falls within the expected parameters of a sentence imposed by a court of law.  Id. at 485.

Garcia has failed to demonstrate a constitutionally protected liberty interest in the loss of telephone privileges.  He also fails to show that the disciplinary sanctions as imposed were arbitrarily applied or are unreasonable, as the sanctions are consistent with the applicable regulations.

Therefore, Garcia's claim challenging the sanctions imposed will be dismissed for lack of merit.

## CONCLUSION

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be dismissed for lack of merit.  An appropriate Order accompanies this Opinion.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: October 28, 2010